BRIAN M. BOYNTON, Principal Deputy Assistant Attorney General
GUSTAV W. EYLER, Director
LISA K. HSIAO, Assistant Director
RACHAEL L. DOUD, Trial Attorney (NYRN 5117049)
ZACHARY L. COWAN, Trial Attorney (NCBN 53432)
U.S. Department of Justice
Consumer Protection Branch
450 5th Street NW
Washington, DC 20002
Telephone: (202) 451-7468
rachael.doud@usdoj.gov
zachary.l.cowan@usdoj.gov

STEPHANIE M. HINDS (CABN 154284)
United States Attorney
MICHELLE LO (NYRN 4325163)
Chief, Civil Division
SHARANYA MOHAN (NYRN 5027768)
Assistant United States Attorney
Northern District of California
450 Golden Gate Avenue
San Francisco, California 94102
Telephone: (415) 436-7198
sharanya.mohan@usdoj.gov

Attorneys for Plaintiff United States of America

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>v.<br><br>KURBO, INC., a corporation,<br><br>and<br><br>WW INTERNATIONAL, INC., a corporation,<br><br>           Defendants. | Case No.: 22-CV-946<br><br>**COMPLAINT FOR PERMANENT INJUNCTION, CIVIL PENALTIES, AND OTHER EQUITABLE RELIEF** |

COMPLAINT
CASE NO: 22-CV-946

1

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges:

1. Plaintiff brings this action under Sections 5(a)(1), 5(m)(1)(A), 13(b), 16(a)(1), and 19, of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a)(1), 45(m)(1)(A), 53(b), 56(a)(1), 57b, and Sections 1303(c) and 1306(d) of the Children's Online Privacy Protection Act of 1998 ("COPPA"), 15 U.S.C. §§ 6502(c) and 6505(d), to obtain monetary civil penalties, a permanent injunction, and other relief for violations of Section 5 of the FTC Act and the Commission's Children's Online Privacy Protection Rule ("Rule" or "COPPA Rule"), 16 C.F.R. Part 312, committed by Defendants Kurbo, Inc. ("Kurbo") and WW International, Inc. ("WW") (collectively, "Defendants").

2. Since at least 2014, Defendants have offered weight management services to children online, and collected and kept those children's personal information, without providing notice to, or obtaining consent from, their parents as required by the COPPA Rule. The Rule is intended to protect the safety and privacy of children online, and Defendants' failure to comply with its requirements is particularly problematic in light of the sensitive nature of the service Defendants offer. Plaintiff seeks civil penalties for each of Defendants' violations of the COPPA Rule and a permanent injunction to ensure Defendants comply with the Rule in the future.

**JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355, and 15 U.S.C. §§ 45(m)(1)(A) and 56(a), because it involves claims arising under federal laws regulating commerce and is commenced by the United States.

4. Venue in the Northern District of California is proper under 15 U.S.C. § 53(b) and 28 U.S.C. §§ 1391(b)(2) and (c)(2) and 1395(a) because Kurbo has its principal place of business in this district, because Defendants transact business in this District, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

5. Divisional assignment to the San Francisco or Oakland Division is proper under Civil L.R. 3-2(c) because Kurbo has its principal place of business in San Francisco and because a substantial part of the events or omissions giving rise to the claims occurred there.

COMPLAINT
CASE NO: 22-CV-946

## SECTION FIVE OF THE FTC ACT

6. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits unfair and deceptive acts or practices in or affecting commerce.

## THE CHILDREN'S ONLINE PRIVACY PROTECTION RULE

7. Congress enacted COPPA in 1998 to protect the safety and privacy of children online by prohibiting the unauthorized or unnecessary collection of children's personal information online by operators of Internet Web sites and online services. The statute directed the Commission to promulgate a rule implementing COPPA, and makes it unlawful for an operator of a website or online service directed to children, or that has actual knowledge that it is collecting personal information from a child, to collect personal information from a child in a manner that violates that rule. 15 U.S.C. § 6502(a)(1). The Commission promulgated the COPPA Rule on November 3, 1999, under Section 1303(b) of COPPA, 15 U.S.C. § 6502(b), and Section 553 of the Administrative Procedure Act, 5 U.S.C. § 553. The Rule went into effect on April 21, 2000. The Commission promulgated revisions to the Rule that went into effect on July 1, 2013. Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, *id.* § 57a(d)(3), a violation of the Rule constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, *id.* § 45(a).

8. The COPPA Rule applies to any operator of a commercial website or online service directed to children that collects, uses, and/or discloses personal information from children, and to any operator of a commercial website or online service that has actual knowledge that it collects, uses, and/or discloses personal information from children. 16 C.F.R. § 312.3. A "child" is defined as an individual under the age of 13. *Id.* § 312.2. The term "personal information" means "individually identifiable information about an individual collected online," and includes, among other things, "[a] first and last name"; "[a] home or other physical address"; "[o]nline contact information"; "[a] telephone number"; "[a] persistent identifier that can be used to recognize a user over time and across different Web sites or online services," such as a "unique device identifier"; and other "[i]nformation concerning the child . . . that the operator collects online from the child" and combines with identifying information. *Id.*

COMPLAINT
CASE NO: 22-CV-946

3

9. The Rule requires the operator of a website or service to meet specific requirements prior to collecting, using, or disclosing children's personal information. *Id.* §§ 312.4, 312.5. First, the operator must provide notice to parents prior to any such collection, use, or disclosure, and this "notice must be clearly and understandably written . . . [and] complete." *Id.* § 312.4(a).

10. Second, the operator "must make reasonable efforts, taking into account available technology, to ensure that a parent of a child receives direct notice of the operator's practices with regard to the collection, use, or disclosure of personal information from children." *Id.* § 312.4(b). This requirement is intended to "ensure that this notice works as an effective 'just-in-time' message to parents about an operator's information practices." Children's Online Privacy Protection Rule, *Notice of Proposed Rulemaking*, 76 Fed. Reg. 59804, 59816 (Sept. 27, 2011). The "direct notice" must, *inter alia*, set forth the "items of personal information the operator intends to collect from the child"; include a "hyperlink to the operator's online notice of its information practices"; and specify "[t]he means by which the parent can provide verifiable consent to the collection, use, and disclosure of" the child's information. 16 C.F.R. § 312.4(c).

11. Third, the operator "must obtain verifiable parental consent prior to collecting, using, or disclosing personal information from children." *Id.* §§ 312.4(a), 312.5. Specifically, "[a]n operator must make reasonable efforts to obtain verifiable parental consent, taking into consideration available technology." *Id.* § 312.5(b)(1). Further, "[a]ny method to obtain verifiable parental consent must be reasonably calculated, in light of available technology, to ensure that the person providing consent is the child's parent." *Id.* An operator may satisfy this requirement by, for example, "[p]roviding a consent form to be signed by the parent and returned to the operator by postal mail, facsimile, or electronic scan," or, if the operator does not disclose the child's information, "an email coupled with additional steps to provide assurances that the person providing the consent is the parent," such as "[s]ending a confirmatory email to the parent following receipt of consent." *Id.* § 312.5(b)(1)(i), (vi).

12. Finally, the operator must retain personal information collected from children only as long as is reasonably necessary to fulfill the purpose for which the information was collected. *Id.* § 312.10.

COMPLAINT
CASE NO: 22-CV-946

4

# DEFENDANTS

13. Defendant Kurbo, also doing business as Kurbo by WW, and formerly Kurbo Health, Inc., is a Delaware corporation with its principal place of business at 301 Howard Street, 15th Floor, San Francisco, California 94105. Kurbo is a wholly-owned subsidiary of Defendant WW that transacts or has transacted business in this District and throughout the United States. At all times material to this Complaint, acting alone or in concert with Defendant WW, Defendant Kurbo has advertised, marketed, and distributed Kurbo by WW (or its predecessor service), a weight-management program for children and teens, to consumers throughout the United States.

14. Defendant WW, formerly Weight Watchers International, Inc., is a Virginia corporation with its principal place of business at 675 Avenue of the Americas, 6th Floor, New York, New York 10010. WW offers a commercial weight loss and management subscription service and sells a range of products related to weight loss and weight management, including food and drinks, kitchen tools, small appliances, dishes, drinkware, scales, books and dining guides, and apparel. WW transacts or has transacted business in this District and throughout the United States. At times material to this Complaint, acting alone or in concert with others, WW has advertised, marketed, and distributed Kurbo by WW throughout the United States. Among other things, WW has promoted Kurbo by WW and co-branded it. WW is identified as the application ("App") developer and seller in the Apple App Store and Google Play Store for the Kurbo by WW App. In addition, WW officers and employees have directly participated in the operations of the Kurbo by WW App and website, including decisions about their COPPA compliance.

# COMMERCE

15. At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

# DEFENDANTS' BUSINESS PRACTICES

## I.  KURBO BY WW

16. In April 2014, Defendant Kurbo began offering a Kurbo weight-management and tracking service designed for use by children ages eight and older, teenagers, and families.

17. In or around 2018, Defendant WW announced its intention to expand its services to provide kids and teenagers with weight-management and wellness services. WW subsequently created Global Youth & Family Advisory Boards focused on both pediatrics and adolescents and staffed with healthcare professionals and academics.

18. In August 2018, Defendant WW acquired Defendant Kurbo and made it a wholly-owned WW subsidiary. In or around August 2019, Defendant WW rolled out a rebranded and revamped Kurbo by WW App and website that continued to provide a weight-management and tracking service intended for children as young as eight. Since that time, Defendant WW has marketed Kurbo by WW through, among other methods, WW social media. Defendants continue to co-brand the service, including the Kurbo by WW App and website.

19. Consumers can access Kurbo by WW in three ways. First, they can download the Kurbo by WW App for free from Apple's App Store or Google's Play Store. Second, they can register through the Kurbo by WW website for the Kurbo by WW premium paid service, which, in addition to weight-management and food and activity tracking services, offers coaching services with a counselor. Third, if applicable, they can register through websites created for companies that provide Kurbo by WW to their employees as a corporate benefit.

## II.  KURBO BY WW'S CHILD-DIRECTED CONTENT, FEATURES, AND MARKETING

20. Kurbo by WW is specifically designed and marketed for use by children as young as 8 years old. For example, in a press release relaunching Kurbo by WW, Defendants called Kurbo by WW "a scientifically-proven behavior change program designed to help kids and teens ages 8-17 reach a healthier weight."

21. The App and website are tailored for children, with an easy user interface and child-oriented lessons, activities, and content, which Defendants have stated are "simple enough for children –

COMPLAINT
CASE NO: 22-CV-946

6

and adults love [them] too." Foods are categorized by color based on a simple traffic light system (red, yellow, and green), rather than the more complex numerical system based on points or calories that is used in the traditional Weight Watchers service. Users select a fruit or vegetable avatar for their account. Defendants market the App in Apple's App Store as offering "fun games, videos and weekly challenges [that] make it more fun to learn about nutrition and exercise," and explained in 2020 and 2021 that they "redesigned the app to make it even simpler for kids, teens, and families to reach a healthier weight!" According to internal documents, Defendants "worked with educational consultants to design impactful game and lesson delivery for children of all ages," and the service includes "child-focused lessons and content."

22. In the Apple App Store, Defendants feature consumer reviews from children as young as eight to market the App. Defendants label these child reviewers "Kurbo Kids." One such review promoted by Defendants in Apple's App Store is from an 11-year-old girl who provided a positive review of the service and explained that it helped her lose "10 pounds in 3 months." Emphasizing the App's child-friendly user interface, Apple's App Store highlights a review by a 12-year-old girl who says, "I was excited because it seemed like something I could do all by myself."

23. From its launch in 2014 through February 2020, over 279,500 people used the Kurbo service. Age information entered for at least 18,600 of those users indicated they were children under the age of 13.

### III. REGISTRATION OPTIONS

**A. The Kurbo by WW App**

24. The vast majority of users enroll in Kurbo by WW through the App. Until at least September 2019, users had a choice to sign up on their own behalf by indicating that they were at least 13 years of age, or as a parent signing up to support a child, using the following interface:



25. While theoretically intended to screen users under 13 from registering without the assistance of a parent, this non-neutral age gate signaled to children that they could register without involving a parent by indicating they were at least 13 years old.

    i. <u>App Accounts Initiated by Users Identifying as Over Age 13</u>

26. If a child selected the "I am at least 13" option, clicked the "Next" button, and entered a birthdate indicating he or she was at least 13 years old, the child would pass the age gate and would then be able to enter his or her name and email address and create a password to create an account. After creating an account, the child could enter information such as his or her food intake, including portion size and food type, which the program labels as red light foods (desserts and sugary drinks), yellow light foods (lean proteins and pasta), or green light foods (fruits and vegetables); activity, including type of activity (for example, running) and time spent on such activity; and height and weight information. Additionally, Defendants receive and record persistent identifiers, including device IDs corresponding to specific accounts.

27. If a child under 13 were to circumvent the age gate and create an account, the child could later revise his or her birthdate to reflect his or her true age. Indeed, hundreds of users who indicated that they were 13 or older when creating an account later revised their ages to reflect that they were actually

1 under 13 years old. These users nonetheless continued to have access to the App. This feature persisted
2 from 2014 through at least September 2019. It was only after FTC staff contacted Defendants about their
3 compliance with the COPPA Rule that Defendants took steps to prevent this from occurring by
4 deactivating accounts where the user has revised his or her age to under 13.

5     28. Between September 2019 and February 2020, Defendants implemented a new age gate
6 screen, which eliminated the reference to being "at least 13" in the second option and the reference to
7 U.S. law requiring a child under 13 to sign up through a parent. Since the implementation of those
8 changes, if a user selects the second option and then inputs a date of birth indicating he or she is under
9 13, the user is presented with a screen that says:

> You've signed in as a child under 13. According to United States law,
> children under 13 must have a parent's permission to use this app. If you
> are a parent and have mistakenly signed in as a child, please reinstall the
> app and carefully follow the directions. If you are a child under 13,
> please ask your parents to join for you.

This age gate continues to signal to children that they can sign up by stating that they are at least 13.

    ii. <u>App Accounts Initiated by Users Identifying as Parents</u>

    29. Users can also sign up for the Kurbo by WW service by indicating that they are a parent supporting a child.

    30. Users who indicate they are signing up as a parent in the App are required to provide their birthdate, name, and email address, and then create a password in order to create a primary account.

    31. The App then prompts the parent to create an account for a child that is linked to the primary account, and solicits information that can be filled in by the parent or directly by the child. Through at least September 2019, the App solicited the child's name, sex, phone number, and birth month and year, as well as the child's height and weight, for the child's account profile. In the fall of 2019, Defendants locked the name field so that the first name remains set with a generic name, such as "Kid1." However, other information continues to be collected. This includes information regarding the child's food intake, activity, and weight, which the child inputs on an ongoing basis, and device IDs

corresponding to specific accounts. The App also uses age information to calculate children's body mass index (BMI).

32. Until November 2019, the App did not provide any form of notice to parents that Defendants were collecting personal information from children, or seek to obtain parents' consent for that collection.

33. Starting in November 2019, the App provided a notice to parents upon registering that it collected personal information from children. That notice was located in a series of hyperlinks, which parents were not required to click on. Further, the notice did not specify all of the categories of information it collected from children, as opposed to parents. Despite adding a notice to the App, Defendants did not at that time implement any mechanism for seeking parental consent.

34. Between December 2019 and January 2020, Defendants implemented a revised notice and altered the mechanism of providing that notice, such that the user had to click a box at the bottom to agree in order to proceed. Even then, the notice was incomplete because, *inter alia*, it did not inform parents that persistent identifiers were collected through the Kurbo by WW website in addition to the Kurbo by WW App. Moreover, at that time, Defendants did not take any measures to ensure that the individual clicking the box was in fact a parent. Defendants did not attempt to institute any such measures until August 2021.

**B. Accounts Initiated Through the Website**

35. Parents can also create Kurbo by WW accounts for children through the Kurbo by WW website or through one of Defendants' corporate partners' websites. These operate similarly to child accounts created through the App, with food, activity, and weight information input and tracked over time.

36. Through at least December 2019, while the website included a notice to parents of the collection of personal information from children, that notice was provided only as one of a series of hyperlinks during the registration process. Further, like the notice provided on the App, the notice did not specify all of the categories of personal information collected from the child, as opposed to the parent.

37. Between December 2019 and January 2020, and again in August 2021, Defendants revised the notice available on the website in the same manner discussed above in paragraph 34. Accordingly, that notice was incomplete in the same ways described in paragraph 34.

### IV. DEFENDANTS' DATA RETENTION AND DELETION PRACTICES

38. Until August 2021, Defendants retained personal information collected online from children indefinitely, only deleting the information when specifically requested by a parent—even if the user's account had been dormant for multiple years.

39. Starting in August 2021, Defendants began limiting their retention of children's personal information to three years, regardless of whether the account is active, unless a parent requests deletion.

## DEFENDANTS ARE SUBJECT TO THE COPPA RULE

40. Defendants are subject to the COPPA Rule, both because Kurbo by WW is directed to children and because Defendants had actual knowledge that they were collecting children's personal information through the Kurbo by WW service.

41. First, as discussed above, Kurbo by WW is specifically designed and marketed for use by children as young as 8 years old. While children under 13 are instructed to register with the help of a parent, the design, content, and features of the App and website clearly envision that the child will then be able to track his or her own food intake and activity.

42. Second, Defendants have actual knowledge that they collect personal information from children under 13. Defendants are aware of users' ages because they request users' age information and use that information to provide their weight-management service. For example, age is a factor in calculating a child's body mass index.

43. Defendants also know that they collect extensive personal information from children who sign up for the Kurbo by WW service. In the case of the hundreds of users who initially stated that they were 13 or over but subsequently indicated they were not, Defendants collected personal information including names, email addresses, and persistent identifiers, as well as other information like height, weight, food intake, and activity that, when combined with the identifying information, also constituted

personal information. Defendants continued to collect this information even after the users indicated they were under 13.

44. Defendants also collected personal information from the thousands of children registered by a parent. In some cases, this included the children's names and telephone numbers. More broadly, this included persistent identifiers that were linked to the accounts, as well as the food, activity, and weight information tracked by the service.

45. Defendants were necessarily aware that they were collecting this information because the information was specifically requested by the Kurbo by WW service and it was inherent in how the service operated.

46. Defendants were also aware of the sensitive nature of their service, which makes it particularly important for them to comply with COPPA's requirements to provide parents with notice of their information collection and use practices, obtain parental consent, and limit the data they retain about children.

47. Indeed, publications such as *Time* magazine and *The Atlantic* have reported criticisms of the service, citing recommendations from the American Academy of Pediatrics that parents should steer their children clear of dieting and avoid discussions regarding weight. Defendants themselves appear to recognize these concerns. For example, Defendants include the following warning in the sign-up flow for the Kurbo by WW App and website:

> If you are under the age of 18, please check your BMI [Body Mass Index] percentile before joining Kurbo. Our program is designed for kids and teens in the 85th percentile and above. Visit cdc.gov and use the child and teen calculator to find your percentile.

Defendants also require those enrolling in the service to confirm the following:

> I confirm that neither I nor my child (if I am signing them up) self-induce vomiting, use diuretics or laxatives for weight loss, have a diagnosed eating disorder or structural heart disease, or follow a post-bariatric surgery routine.

48. The sensitive nature of the Kurbo by WW service makes it particularly important for parents to be able to make informed decisions about the collection of personal information from their children, as required by the COPPA Rule.

## DEFENDANTS HAVE FAILED TO PROVIDE NOTICE AND OBTAIN PARENTAL CONSENT AS REQUIRED BY THE COPPA RULE

49. Kurbo by WW is directed to children, and Defendants have actual knowledge that they are collecting personal information from children. Defendants are required to comply with the COPPA Rule by, among other things, providing direct notice to parents of Defendants' information collection practices; obtaining parents' verifiable parental consent; and retaining children's personal information for only as long as is reasonably necessary to fulfill the purpose for which it was collected. Defendants have not complied with these requirements.

50. The App did not provide any notice to parents until November 2019, and even then did not solicit parental consent. The notice that Defendants provided on the website and started providing on the App in November 2019 was also deficient, including because it did not clearly and completely specify the categories of information collected from children. This notice also failed to qualify as "direct notice" to parents, as required by the COPPA Rule, because Defendants did not "make reasonable efforts, taking into account available technology, to ensure that" parents actually received it, 16 C.F.R. § 312.4(b), instead placing it in a series of hyperlinks.

51. While Defendants subsequently revised the content of the notice and the manner of providing it, they still failed to comply with the COPPA Rule's requirement to provide a complete and clear notice and make reasonable efforts to ensure that parents actually received it.

52. With respect to the App, Defendants also failed to institute a method for obtaining verifiable parental consent that was reasonably calculated to ensure that a parent was actually providing consent.

53. Unlike users of the App, users of the paid subscription service through the website provide credit card information, which is an accepted form of parental consent. 16 C.F.R. § 312.5(b)(1). As discussed in paragraph 34, however, the notice that was provided to parents before soliciting consent

was not "clear[]" and "complete," as required by the COPPA Rule. *Id.* § 312.4(a). Because parents were not fully apprised of what they were consenting to, any consent they provided also failed to comply with the Rule. *Id.* § 312.5(a).

54. Finally, until August 2021, Defendants retained children's personal information indefinitely, rather than "only as long as is reasonably necessary to fulfill the purpose for which the information was collected." 16 C.F.R. § 312.10. Even now, Defendants retain children's personal information for three years—regardless of whether the child's account is even active.

## COUNT I

## VIOLATION OF THE COPPA RULE

55. Paragraphs 1-54 are incorporated as if set forth herein.

56. As described above, Defendants are operators as defined by the COPPA Rule, 16 C.F.R. § 312.2.

57. In numerous instances, in connection with operating an online service, Defendants have collected or used personal information from children younger than age 13 in violation of the Rule by:

   a. Failing to provide through the App and website a clear, understandable, and complete direct notice to parents of Defendants' practices with regard to the collection, use, or disclosure of personal information from children, in violation of Section 312.4(a) and (c) of the Rule, 16 C.F.R. § 312.4(a) and (c);

   b. Failing to make reasonable efforts, taking into account available technology, to ensure that parents receive the direct notice on the App and website to be able to provide informed consent, in violation of Section 312.4(b)-(c) of the Rule, 16 C.F.R. § 312.4(b)-(c);

   c. Failing to obtain verifiable parental consent before any collection, use, or disclosure of personal information from children, in violation of Section 312.5(a)(1) of the Rule, 16 C.F.R. § 312.5(a)(1); and

   d. Retaining personal information collected online from children for longer than reasonably necessary to fulfill the purpose for which the information was collected, in violation of Section 312.10 of the Rule, 16 C.F.R. § 312.10.

58. This conduct violated COPPA, pursuant to 15 U.S.C. § 6502(a)(1). Additionally, pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Rule constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## **THE COURT'S POWER TO GRANT RELIEF**

59. Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. 114-74, sec. 701, 129 Stat. 599 (2015), and Section 1.98(d) of the FTC's Rules of Practice, 16 C.F.R. § 1.98(d), authorizes this Court to award monetary civil penalties of not more than $43,792 for each violation of the Rule committed with actual knowledge or knowledge fairly implied.

60. Each collection, use, or disclosure of a child's personal information constitutes a separate violation of the COPPA Rule for the purpose of assessing monetary civil penalties.

61. Section 13(b) of the FTC Act, U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC, including the COPPA Rule.

62. Section 19 of the FTC Act, 15 U.S.C. § 57b, authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the COPPA Rule, including, but not limited to, the refund of money or payment of damages.

63. Defendants have violated the COPPA Rule with actual knowledge or knowledge fairly implied on the basis of objective circumstances, and are therefore liable for civil penalties. 15 U.S.C. § 45(m)(1)(A).

64. Unless enjoined and restrained by order of the Court, Defendants will continue to engage in such violations.

COMPLAINT
CASE NO: 22-CV-946

15

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff, United States of America, requests that the Court:

a. Enter judgment against Defendants and in favor of Plaintiff for each violation alleged in this Complaint;

b. Enter a permanent injunction to prevent future violations of the FTC Act, COPPA, and the COPPA Rule by Defendants;

c. Award Plaintiff monetary civil penalties from Defendants for each violation of the FTC Act, COPPA, and the COPPA Rule; and

d. Award Plaintiff the costs of bringing this action, as well as any additional relief the Court determines to be just and proper.

Dated: February 16, 2022

Respectfully submitted,

| OF COUNSEL: | FOR THE UNITED STATES OF AMERICA: |
|---|---|
| KRISTIN COHEN<br>Acting Associate Director<br>Division of Privacy and Identity Protection | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General<br>Civil Division |
| MARK EICHORN<br>Assistant Director | GUSTAV W. EYLER<br>Director<br>Consumer Protection Branch |
| DANIELLE ESTRADA<br>DAVID WALKO<br>Attorneys<br>Federal Trade Commission<br>600 Pennsylvania Avenue, N.W.<br>Mailstop CC-10539<br>Washington, D.C. 20850<br>Tel: 202-326-2630 (Estrada)<br>Tel: 202-326-2880 (Walko)<br>destrada@ftc.gov<br>dwalko@ftc.gov | LISA K. HSIAO<br>Assistant Director<br>/s/ *Rachael L. Doud*<br>RACHAEL L. DOUD<br>ZACHARY L. COWAN<br>Trial Attorneys<br>Consumer Protection Branch<br>U.S. Department of Justice<br>450 5th Street NW<br>Washington, DC 20002<br>Telephone: (202) 451-7468<br>rachael.doud@usdoj.gov<br>zachary.l.cowan@usdoj.gov |

COMPLAINT
CASE NO: 22-CV-946

1 | STEPHANIE M. HINDS
United States Attorney

/s/ *Sharanya Mohan*
SHARANYA MOHAN
Assistant United States Attorney
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7198
sharanya.mohan@usdoj.gov

COMPLAINT
CASE NO: 22-CV-946

17